**FRANCE MILLING CO., Inc., v. WASH-BURN–CROSBY CO., Inc.** *

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 311.

1. **Trade-marks and trade-names and unfair competition** �⩝31—User of trade-mark "Gold Medal" as applied to pancake flour may enjoin similar use by one who had long used mark for raw wheat flour.

Manufacturer of prepared pancake and buckwheat flour, distributed under trade-mark "Gold Medal" for 20 years, *held* entitled to enjoin competitive use of mark in distribution of prepared flours by manufacturer, notwithstanding latter had acquired the right to use the trade-mark for raw wheat flour many years prior to its use by plaintiff.

2. **Trade-marks and trade-names and unfair competition** �⩝86—Owner of mark held by laches to have lost right to enjoin use by another in noncompetitive business.

Manufacturer of flour under Gold Medal trade-mark, who for many years acquiesced in use of same mark by manufacturer of pancake and buckwheat flour, and sold latter raw flour for use in manufacture, *held* to have lost by laches all right to enjoin such use of mark.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the France Milling Company, Inc., against the Washburn-Crosby Company, Inc. Interlocutory decree for plaintiff, granting injunction pendente lite (3 F.[2d] 321), and defendant appeals. Affirmed.

This case, though heard upon affidavits only, was so fully shown below that it may be regarded as "tried out"—as both parties agree.

The plaintiff hereinafter called France, sued to protect its trade-mark "Gold Medal" as applied to prepared "pancake" and buckwheat flour. The first of these products is composed of wheat and corn flours, leavened and seasoned, and the second is a mixture of wheat and buckwheat flours, similarly treated; and both have hitherto been sold by France in packages, usually rather small, for purposes of distribution. Plaintiff is a corporation doing business at Cobleskill, N. Y., and has been putting out its flours since 1904, in which year it obtained a gold medal for the same at the Louisiana Purchase Exposition at St. Louis. In the following year it adopted, and has since continuously used, the words "Gold Medal" as its trade-mark for the goods that won the prize, accompanied by a representation of the obverse and reverse of a medal. The business is of mod-

erate size, but its sales have extended into almost half the states of the Union, centering, however, in the country's northeastern region.

Defendant, hereinafter called Washburn, is a corporation whose principal office is at Minneapolis, Minn. It is one of the largest producers of wheat flour in the world, and its business is correspondingly extended. Especially has it for many years advertised and sold flour in enormous quantities in the same northeastern portion of this country in which France has for upwards of 20 years found a considerable market.

Washburn, by its predecessors, and in a continuous and extending business, has used "Gold Medal" as a trade-mark for wheat flour since 1880, selling the same in barrels and bags; but until the end of 1923 or thereabouts it never made nor sold pancake flour, and had nothing to do with buckwheat so far as shown. For many years it has had a branch establishment at Buffalo, N. Y., in charge of a vice president, and from that branch France bought some of the wheat flour it required, giving orders and conducting correspondence on paper prominently announcing its trade-mark and the character of its products. This began at least as early as 1912.

In 1923 rumors reached France that Washburn intended to extend its business to prepared flours in package form under the trade-mark "Gold Medal," and France protested against such alleged infringement. The correspondence is in evidence, and shows in our opinion boldness and frankness on the part of France, and evasion on that of Washburn, but the latter never admitted that France had any right to the phrase "Gold Medal."

In December, 1923, Washburn registered the phrase as a trade-mark for prepared pancake flour. This was quite naturally taken as a declaration of war, and France, in March, 1924, petitioned the Patent Office to cancel Washburn's registration, and it was canceled by agreement. We find that this registration was a corporate act, it was recognized as soon as counsel were consulted as a tactical blunder, yet we regard the transaction as some evidence of how the practical business men conducting Washburn's affairs looked upon prepared or "pancake" flour as compared with "straight" or unmixed flour. They thought of it as a different commodity, and therefore something new, to which their old and well-known trade-mark might be extended; hence the new registration. Washburn's "Gold Medal" flour (sim-

*Certiorari denied 45 S. Ct. 640, 69 L. Ed. —.

pliciter) had been registered for many years before France began business.

We find that France knew, as every man in any kind of flour business knew, that Washburn in 1904 was widely selling wheat flour under the trade-mark "Gold Medal"; also that France did nothing secretly, and Washburn's agents and officers in the eastern part of the United States knew what France was doing for more than 10 years before 1923, and did nothing about it—except to encourage France to buy flour from them. Both sets of business men regarded wheat flour as raw material—for France. During the 44 years that Washburn has used "Gold Medal" as a trade-mark, the phrase has been registered upwards of 60 times in the Patent Office, and applied to articles as diverse as fishing rods and finishing wax, kidney medicine, and beer, and almost every kind of food product.

France having begun this suit, Washburn counterclaimed, asserting that France's use of the trade-mark for prepared flours was and always had been an infringement upon its rights, and in its turn demanded injunctive relief.

The court below granted France's motion, and denied Washburn's, whereupon the latter appealed.

Frank A. Whitely, of Minneapolis, Minn., Edward S. Rogers, of Chicago, Ill., and Harry D. Nims, of New York City, for appellant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). There was a good deal said at bar about fraud and wrongdoing, which we lay entirely aside. The reason for France's assumption of Gold Medal in 1905 was pardonable pride in his prize; there was no intent on his part to trade on Washburn's fame, nor is there any evidence that he ever did so trade.

We likewise lay aside all arguments based on registration of marks; these litigants must both stand on what are usually (and not very accurately) called their "common-law" rights, aided by such equities derived from conduct and lapse of time as may serve them.

France and Washburn, now that the latter has gone into the business of selling prepared flours, are competitors, something they never were before 1924. It may be true that

a competent cook can mix Washburn's Gold Medal flour with corn meal, leaven and appetizing flavors, and make perhaps the best "pancakes"; but the parties hereto do not make nor sell cakes—they sell the cook something out of which she can evolve the edible product without thought or much labor. This something Washburn neither made nor sold before 1924; France did and had for 20 years.

[1] Thus at the time this suit began the situation in one view was exactly "the ordinary case of parties competing under the same mark, [and] it is correct to say that prior appropriation settles the question" between them. Hanover, etc., Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713.

This ruling by Pitney, J., may be amplified by inquiring whether the parties at bar are now competing under the same mark in the same goods. They evidently are—in "pancake flour"; wherefore the next and vital inquiry is whether "straight" wheat flour, and "prepared flours" are the same goods or the same "class of commodities."

This is a question of fact; there is no rule of law applicable except that legal principle which underlies both the allied doctrines of trade-marks and unfair competition, viz.: that any honest man is entitled to have the good will of his business protected, by protecting the means whereby the public has come to distinguish and recognize the complainant's product.

It follows that, if one asks whether in 1923 Washburn had any business in pancake or buckwheat flours to be protected, the answer is "No," while it is emphatically "Yes," if the query be put as to France.

If then so many years of building up trade in "straight" wheat Gold Medal flour, had produced no business in prepared flours, how can it be said that the two articles belong to the same class of commodities? Classification of any commercial article depends far more on commercial custom than upon the inherent nature of the product. Dog biscuit and pilot bread are closely allied in physical origin, and so are guncotton and calico, but in commercial classification they are poles apart. The difference between "straight" and prepared flours is not so great as in the illustration given, but that as commercial commodities they are different is in our opinion plainly shown by the exhibition of business methods given by the affidavits; and that such was Washburn's own opinion in 1923 we have pointed out above.

To take another view of the matter, the degree or exclusiveness of appropriation accorded to the originator of a trade-name often varies with the kind of name he originates. If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many differing kinds of business. Of this "Kodak" is a famous example, and the English courts have prevented one from putting forth Kodak bicycles, at the suit of the originator of the name for a totally different article. Eastman v. Kodak Cycle Co., 15 R. P. C. 105; cf. Re Dunn's Trade-Mark, 7 R. P. C. 311, and Dunlop v. Dunlop, 16 R. P. C. 12. In this court the same influence is seen in Aunt Jemima Mills Co. v. Rigney, 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039, where the above line of cases is quoted and relied on.

The phrase "Gold Medal" is distinctly not in the same class of original, arbitrary, or fanciful words as "Kodak" and "Aunt Jemima." It is a laudatory phrase, suggestive of merit, recognized by some organization of authority awarding a prize. It is only allied to some particular business or person by insistent, persistent advertising. Washburn's flour has been so advertised, and the proof is ample that publicity efforts have borne fruit, so that Gold Medal flour means among purchasers Washburn's flour. Yet it must always be remembered that there is nothing original about the name per se; it is exactly like the phrase "Blue Ribbon," and has been as extensively and variously applied. One who devises a new, strange, "catching" word to describe his wares may and often has by timely suit prevented others from taking his word or set of words to gild the repute of even wholly different goods (cases supra); but one who takes a phrase which is the commonplace of self-praise like "Blue Ribbon" or "Gold Medal" must be content with that special field which he labels with so undistinctive a name. Of this Pabst, etc., Co. v. Decatur, etc., Co. (C. C. A.) 284 F. 110, and Anheuser, etc., Co. v. Budweiser, etc., Co. (C. C. A.) 295 F. 306, constitute a perfect illustration. In the first decision Blue Ribbon was restricted to the single product with which plaintiff had associated it, while in the second Budweiser was given a wider sphere of influence. In the present case Washburn has made known by advertising Gold Medal not a line of products, nor any product of a varied business, but one separate, well-known commodity, pure wheat flour, and with that he must be content.

[2] Taking still another view of the evidence, Washburn's claim is not timely; the laches, indeed the acquiescence, of so many years, while France was building up a noncompetitive business, must be given weight. Carroll v. McIlvaine, 183 F. 22, 105 C. C. A. 314, affirming 171 F. 125, is conclusive against the award of any injunction against France, and the inequity of granting such relief is too manifest for discussion.

Result is: Washburn, by persistent and pushing use of a well-known and nondistinctive name has on this record made it a good trade-mark for just what it was applied to, pure or straight wheat flour; to that commodity France never applied the name, but did apply it to a commercially distinct article as he had good right to do.

Both parties are entitled to be protected in their several businesses. France has not attacked Washburn; therefore the latter needs no relief. Washburn has deliberately attacked France; therefore the decree below was right, and is affirmed with costs.