PHYSICIANS FORMULA COSMETICS, INC., Plaintiff,

v.

WEST CABOT COSMETICS, INC., Defendant.

No. 86–CV–1248.

United States District Court, E.D. New York.

April 20, 1987.

Debevoise & Plimpton, New York City (Roger E. Podesta, Bruce P. Keller, Marian W. Payson, and Anne E. Cohen, of counsel), for plaintiff.

Warshaw Burstein Cohen Schlesinger & Kuh (James E. Daniels, of counsel), and Stiefel, Gross, Kurland & Pavane, P.C. (Marc S. Gross, of counsel), New York City, for defendant.

## DECISION AND ORDER

BRAMWELL, District Judge.

This is a trademark infringment case in which both plaintiff Physicians Formula Cosmetics, Inc. and defendant West Cabot Cosmetics, Inc. claim that recent conduct by the other is likely to create substantial confusion among consumers of soaps and

related cosmetics and skin care products. Plaintiff's complaint asserts federal statutory claims of trademark infringement and false representation under sections 32(1) and 43(a) of the Lanhan Trade-Mark Act, 15 U.S.C. §§ 1114(1) and 1125(a), common law claims of trademark infringement, trade name infringement, and unfair competition, and a statutory state law claim of false advertising under sections 349 and 350 of New York's General Business Law. Defendant's counterclaims allege false representation in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition. Presently before the Court are plaintiff's motion for summary judgment on its trademark infringement claims and defendant's motion for a preliminary injunction "to preserve the status quo" pending the ultimate outcome of this case. For the reasons that follow, plaintiff's motion is granted, and defendant's motion is denied.

## I. FACTUAL BACKGROUND

Because the factual background of this case is essentially undisputed, the Court will merely summarize what appear to be the uncontested facts that the parties have presented in voluminous detail.

Plaintiff is a California corporation that has been, since December, 1985, a wholly-owned subsidiary of Tambrands, Inc., a Delaware corporation with its principal place of business in Lake Success, New York. Since 1937, plaintiff has marketed cosmetics and skin care products in interstate commerce under the trademark PHYSICIANS FORMULA.[1] The PHYSICIANS FORMULA mark was registered on the Supplemental Register in 1964, and on the Principal Register in 1982, for numerous skin care products and cosmetics. As of December, 1985, PHYSICIANS FORMULA products were sold in over 2,300 retail outlets in 28 states and by mail order to 1,316 customers in 38 states. During the 15-year period from 1970 to 1985, plaintiff spent more than $6 million, or approximately 15 percent of its annual gross sales per year, in aggressively promoting its PHYSICIANS FORMULA products. Since 1970, PHYSICIANS FORMULA sales have steadily increased from approximately $400,000 to over $6 million.

Defendant is a New York corporation located in Central Islip, New York. Since 1888, defendant and its predecessors have marketed hard-bar soaps under the trademark PHYSICIANS & SURGEONS. In 1947, one of defendant's predecessors obtained federal registration of the PHYSICIANS & SURGEONS mark for use in connection with soaps. That registration has never been amended or modified to include any products other than soaps, and until 1981, the mark was used only on hard-bar soap products. Sales of PHYSICIANS & SURGEONS soaps have gradually increased over the years, but have never reached $200,000.

Until recently, both the PHYSICIANS FORMULA and PHYSICIANS & SURGEONS trademarks have peacefully coexisted in the market. Moreover, although the marks share a common word and theme, there is no evidence that consumers were ever confused as to the source of either product, and neither party challenged the other's trademark. Recently, however, the owner of each mark has commenced a new marketing campaign that is alleged by the other to create a likelihood of substantial confusion among the consuming public. In 1981, defendant's predecessor began marketing, in addition to hard-bar soaps, a limited number of skin care products under the PHYSICIANS & SURGEONS trademark.[2] Defendant introduced several other similar skin care prod-

---

**1.** Specifically, PHYSICIANS FORMULA skin care products include Cleansing Lotion, Cleansing Cream, Night Cream, Deep Cleanser, Deep Pore Cleansing Gel, Avocado Creamy Cleanser, Skin Freshener, Moisture Lotion, Moisturizer, Collagen Dry Skin Cream, and Avocado Dry Skin Cream. PHYSICIANS FORMULA cosmet-

ics include facial makeup, eye makeup, makeup remover, lipstick, lip care products, sun screen, and nail care products.

**2.** In 1981, the PHYSICIANS & SURGEONS line was expanded to include Natural Vitamin E Cream, Vitamin E Oil, and Cocoa Butter Cream.

ucts in 1985.[3] Total sales of PHYSICIANS & SURGEONS non-soap products increased from approximately $18,000 in 1981 to approximately $70,000 in 1986, although defendant apparently has decided, at least temporarily, to cease marketing these products, and sales currently average less than $3,000 per month. Perceiving defendant's new line of non-soap products as an expansion by defendant from hard-bar soaps to skin care products, plaintiff commenced the present trademark case in April, 1986 to prevent defendant from continuing to market its new line of products. Subsequently, when defendant became aware that plaintiff was about to launch a new marketing strategy centered around a modification of the PHYSICIANS FORMULA trade dress to accentuate the word "Physicians," defendant filed false representation and unfair competition counterclaims seeking to prevent plaintiff from doing so. The Court will address plaintiff's motion for summary judgment first, and defendant's motion for a preliminary injunction thereafter.

## II. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if the affidavits and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, —— U.S. ——, ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). In the present case, as previously noted, the material facts are essentially undisputed. Plaintiff asserts that it is entitled to judgment as a matter of law because (1) plaintiff's PHYSICIANS FORMULA trademark is a valid, distinctive mark for cosmetics and skin care products; (2) plaintiff has a prior right to use its PHYSICIANS FORMULA trademark and therefore to exclude others from using confusingly similar marks on cosmetics and skin care products; and (3) there exists a likelihood of substantial customer confusion if West Cabot is permitted to apply the PHYSICIANS & SURGEONS trademark to cosmetics or skin care products.

■ With respect to plaintiff's first contention, defendant essentially concedes that the PHYSICIANS FORMULA trademark is valid and distinctive, and consequently is entitled to protection.[4] However, defendant "strenuously denies" plaintiff's second contention, that is, plaintiff's claim to a prior and exclusive right to use the PHYSICIANS FORMULA mark on cosmetics and skin care products. Although conceding that it is too late to prevent plaintiff's use of the PHYSICIANS FORMULA mark on cosmetics and skin care products, defendant argues that its own prior use of the PHYSICIANS & SURGEONS mark on hard-bar soap products entitles it to extend application of the mark to other related skin care products. After considering the long history of caselaw regarding this issue, the Court agrees with plaintiff's claim of priority.

Although the Court has uncovered no authority directly controlling the issue, analogous cases in the Second Circuit date back as early as *George v. Smith*, 52 F. 830

---

**3.** In 1985, the PHYSICIANS & SURGEONS line was expanded to include Creamy Cleansing Lotion, Moisturizing Lotion, Moisturizing Cream, and Pore Refining and Toning Lotion.

**4.** In any event, the PHYSICIANS FORMULA mark is a "suggestive" mark as defined by the Second Circuit in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976), because it is more than merely descriptive of plaintiff's goods and because imagination, thought, and perception are required to reach a conclusion as to the nature of the goods. *Id.* at 10–11; *cf. 20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 747 F.2d 81, 87–89 (2d Cir.1984) (explaining differences between "descriptive" and "suggestive" marks), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985). Accordingly, the mark would be entitled to protection even without proof of secondary meaning. *Id.* at 11; *see also C.L.A.S.S. Promotions Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 17 (2d Cir.1985); *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1132 (2d Cir.1979).

(C.C.S.D.N.Y.1892). In that case, the court held that the plaintiffs' use of the trademark "Epicure" for canned salmon entitled them to an injunction against the defendants' use of the same trademark for the same product, even though defendants had used the "Epicure" mark for canned tomatoes and peaches long before plaintiffs had used it on canned salmon. *Id.* at 830–32. And although the court suggested in dictum that defendants might have prevailed if the disputed product were, instead of canned salmon, "other fruit and vegetables, analogous to tomatoes and peaches," *see id.* at 831–32, that possibility was apparently put to rest by the subsequent decision of the Second Circuit in *France Milling Co. v. Washburn-Crosby Co.*, 7 F.2d 304 (2d Cir.), *cert. denied*, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925).

In *France Milling Co.*, plaintiff sought to protect its trademark "Gold Medal" as applied to prepared pancake and buckwheat flour. Defendant had used the same "Gold Medal" trademark on "straight" wheat flour since long before plaintiff's first use of the mark, but did not attempt to extend its use of the mark to prepared pancake flour until 20 years after plaintiff began marketing prepared pancake and buckwheat flour under the mark. Notwithstanding the obvious similarity between defendant's traditional wheat flour product and the prepared flour products it subsequently sought to market under the same trademark, the Second Circuit affirmed the issuance of an injunction in favor of the plaintiff, holding that plaintiff possessed a prior and exclusive right to use the mark on prepared flours. *See id.* at 305.

Since the Second Circuit's decision in *France Milling Co.*, courts in other circuits have ruled similarly in analogous cases. *See, e.g., Artcraft Novelties Corp. v. Baxter Lane Co.*, 685 F.2d 988, 990–91 (5th Cir.1982) (plaintiff had prior right to exclusive use of "Texas" trademark on novelty giant fly swatter and housefly notwithstanding defendant's 20 years of prior use of the mark on as many as 600 other novelty items); *Borg-Warner Corp. v. York-Shipley, Inc.*, 293 F.2d 88, 92–93 (7th Cir.) (party who was first to acquire secondary

meaning in use of "York" trademark for oil conversion burners and furnaces had prior and exclusive right to use mark on such products despite other party's prior authorized use and registration of same mark for ice-making, refrigeration, and air-conditioning equipment), *cert. denied*, 368 U.S. 939, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961); *Consumers Petroleum Co. v. Consumers Co.*, 169 F.2d 153, 161 (7th Cir.1948) (defendant engaged in sale of solid fuels under the name "Consumers Company of Illinois" acquired no prior right to apply that tradename to fuel oils, because it had not commenced selling fuel oils under that name until after plaintiff had commenced selling fuel oils under the name "Consumers Petroleum Company"), *cert. denied*, 335 U.S. 902, 69 S.Ct. 408, 93 L.Ed. 437 (1949); *Dwinell-Wright Co. v. National Fruit Product Co.*, 140 F.2d 618, 624 (1st Cir.1944) (where plaintiff marketed fruit and vegetable juices under trademark "White House," defendant's marketing of blend of orange and grapefruit juice under same mark was infringement notwithstanding defendant's prior use of the mark on teas and coffees); *Atlas Beverage Co. v. Minneapolis Brewing Co.*, 113 F.2d 672, 677 (8th Cir.1940) (where plaintiff marketed beer under trademark "White Seal," defendant's use of the same mark on beer was infringement notwithstanding prior use of the mark by affiliate of defendant on whiskey and malt liquor); *Treager v. Gordon-Allen, Ltd.*, 71 F.2d 766, 768 (9th Cir.1934) (plaintiff's use of trademark "Par" on laundry soap entitled it to prior and exclusive right to use the mark on laundry soap notwithstanding defendant's prior use of the mark on mechanic's hand soap); *Mile High Upholstery Fabric Co. v. General Tire & Rubber Co.*, 221 U.S.P.Q. 217, 221–22 (N.D.Ill.1983) (plaintiff's use of trademark "Essex" on decorator fabrics entitled it to exclude defendant's use of same mark on wallcovering products, notwithstanding defendant's prior registration and use of the same mark in connection with manufacture and sale of sponge rubber carpet padding); *cf. Key Chemicals, Inc. v. Kelite Chemicals Corp.*, 464 F.2d 1040, 1043 (C.C.P.A.1972)

(trademark owner cannot by normal expansion of business extend use of trademark to related goods where result would be likelihood of confusion with mark already registered by prior user for same or similar goods). *But see Natural Footwear Ltd. v. Hart, Schaffner & Marx,* 760 F.2d 1383, 1406 & n. 61 (3d Cir.) (dictum) (prior use of trademark will apply as well to subsequent use of mark on related products, thereby "essentially allow[ing] the later use … to relate back to the first use"), *cert. denied,* — U.S. —, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985); *Mantle Lamp Co. v. Aladdin Mfg. Co.,* 78 F.2d 426, 428–29 (7th Cir.) (plaintiff's use of trademark "Aladdin" for nearly 30 years on kerosene mantle lamps and accessories entitled plaintiff subsequently to expand and extend exclusive use of the mark to portable electric lamps, even though defendant had marketed electric lamps under the same mark for 15 years), *cert. denied,* 296 U.S. 639, 56 S.Ct. 173, 80 L.Ed. 454 (1935); *J.C. Penney Co. v. Security Tire & Rubber Co.,* 382 F.Supp. 1342, 1344 (E.D.Va.1974) (plaintiff user of common law trademark "Scat-Trac F/X" on bicycle tires had right to expand and extend exclusive use of the mark to automobile tires even though plaintiff's expansion of business from bicycle tires to automobile tires began subsequent to defendant's marketing of automobile tires under the trademark "Scat Cat;" plaintiff granted injunction against defendant's future sale of "Scat Cat" tires).

■ In light of the foregoing authority, the Court is convinced that although de-fendant has a prior right to use the PHYSICIANS & SURGEONS trademark on hard-bar soap products, plaintiff has a prior and exclusive right to use the PHYSICIANS FORMULA mark in connection with cosmetics and skin care products.

■ Having disposed of the first two contentions supporting plaintiff's motion for summary judgment, the Court turns to the third and ultimate contention: that there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled or confused as to the source of defendant's line of PHYSICIANS & SURGEONS skin care products. Regarding this issue of likelihood of confusion, the Second Circuit has outlined a number of factors that the Court should consider:

> [T]he strength of [the senior user's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account.

*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). These factors are to be weighed not only in cases of non-competing goods, but also in cases of competing goods. *Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 966 (2d Cir.1981).[5]

---

**5.** In the present case, defendant's new skin cleansing products are not only competitive with plaintiff's products, they are for all practical purposes identical. Although the Second Circuit has made it clear that the *Polaroid* factors should be weighed in cases of competing goods as well as in cases of noncompeting goods, *see, e.g., Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 966 (2d Cir.1981), it is not entirely clear whether those factors need be weighed in cases, such as the present one, involving *identical* goods. The Court will proceed on the assumption that the *Polaroid* factors should be applied in such cases, although on several occasions the Second Circuit has hinted that a plaintiff's burden of establishing a likelihood of confusion is significantly lighter where the defendant's goods are not only competitive but also identical. *See, e.g., Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1008–09 (2d Cir.1983) (injunction against alleged infringer reversed as to non-competitive goods, but affirmed as to "overlapping" goods); *Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 966, 967 (2d Cir.1981) (rejecting *per se* rule where products are merely competitive, but recognizing that trademark injury "might be inevitable" where the trademarks and products are "practically identical"); *American Home Products Corp. v. Johnson Chemical Co.,* 589 F.2d 103, 106 (2d Cir.1978) (in cases of identical goods, courts "need not go as far" as in cases of non-identical goods; *Polaroid* factors not weighed or even mentioned); *accord Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 925 (10th Cir.

1. *Strength of the mark.* West Cabot concedes that the PHYSICIANS FORMULA mark is valid and distinctive, and the evidence is consistent with plaintiff's characterization of the mark as having "strong, evocative appeal." The mark was registered on the Supplemental Register in 1964 and on the Principal Register in 1982. Moreover, although the PHYSICIANS FORMULA mark might be considered "merely descriptive" if applied to products such as cough syrup or aspirin, the mark is no doubt "suggestive" when applied to cosmetics and skin care products. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 10–11 (2d Cir.1976) (a mark is "suggestive" if it is more than descriptive but less than fanciful; that is, if it requires imagination, thought, and perception to reach a conclusion as to the nature of the goods).[6] And although the mark consists only of relatively common words, in light of the highly successful use of the mark by plaintiff and its predecessors over the past 50 years, this Court finds that the PHYSICIANS FORMULA mark possesses at least moderate strength.

2. *Similarity between the two marks.* In evaluating the similarity between two marks, courts have considered not only the visual appearance of the marks, but also their sound, connotation, and overall commercial impression. *See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 925–26 (10th Cir.1986); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.,* 748 F.2d 669, 672 (Fed.Cir.1984); *see also* 2 J. McCarthy, Trademarks and Unfair Competition § 23:4 (2d ed. 1984) (the "sound, sight and meaning" trilogy). In the present case, defendant accurately observes, and plaintiff appears to agree, that there are dissimilarities between the visual appearances of the PHYSICIANS FORMULA and PHYSICIANS & SURGEONS trademarks.[7] Defendant cannot dispute, however, that the marks are substantially similar in sound and meaning. In both marks, the word "Physicians" is the first and dominant word, and the parties agree that both marks are intended to convey an impression that the products have some kind of medical endorsement. Under these circumstances, the Court concludes that although the two trademarks are visually dissimilar, they are substantially in sound and meaning. *See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co., supra,* 805 F.2d at 926 ("Beer Nuts" and "Brew Nuts"); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc., supra,* 748 F.2d at 672–74 ("Spice Islands" and "Spice Valley"); *American Home Products Corp. v. Johnson Chemical Co.,* 589 F.2d 103, 107 (2d Cir.1978) ("Roach Motel" and "Roach Inn") (citing numerous cases for proposition that use of different words with similar meaning may tend to confuse).

3. *Proximity of the products and likelihood that plaintiff will bridge the gap.* These two factors weigh heavily in favor of a finding of likelihood of confusion. Defendant's new line of skin care products is, for all practical purposes, identical to products already marketed by plaintiff,[8] and are geared to the same market and sold in similar stores. As a result, the gap has been completely bridged.[9]

4. *Actual confusion.* There is virtually no probative evidence of actual confusion presented. Plaintiff has submitted the results of a survey to support its contention that consumer confusion is likely. However, because defendant subsequently submitted the affidavit of Dexter Needle of

---

1986) ("a small degree of similarity between two marks may lead to a finding that confusion is likely when the products are identical, inexpensive items").

6. *See supra* note 4.

7. The PHYSICIANS & SURGEONS name appears in royal blue, old English lettering encircled by an oval. The PHYSICIANS FORMULA name, on the other hand, appears horizontally and is printed in off-black modern typeface.

The PHYSICIANS FORMULA name is not bordered by an oval or any other figure, but instead appears under a stylized, mint green colored "P," which bears no resemblance to the old English style of the PHYSICIANS & SURGEONS mark.

8. *Compare supra* note 1 *with supra* notes 2 *and* 3.

9. *See also supra* note 5.

Audits & Surveys, Inc., which asserts that the survey is fatally flawed and entitled to no weight, the Court will disregard the survey for the purpose of this motion. Nevertheless, although an absence of actual confusion may weigh in a defendant's favor, *McGregor-Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1136 (2d Cir.1979), it is well-settled in the Second Circuit that proof of actual confusion is not essential to prove infringement, particularly where, as here, the allegedly infringing products are relatively new, because actual confusion is very difficult to prove and because only proof of a likelihood of confusion is required. *See, e.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986); *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970).

5. *Defendant's good faith.* For the purpose of this motion, the Court assumes that defendant acted in good faith in extending its "PHYSICIANS & SURGEONS" trademark to the new line of skin care products. Although plaintiff argues that defendant acted in bad faith and with knowledge of the "PHYSICIANS FORMULA" mark, the evidence of bad faith is speculative at best.

6. *Quality of defendant's product.* There is no evidence that defendant's skin care products are of an inferior quality. The record does reveal, however, and defendant does not challenge, that plaintiff maintains a substantially more extensive quality control program. Thus, this factor weighs in plaintiff's favor, although only slightly.

7. *Sophistication of the buyers.* Because the evidence is essentially undisputed that the products at issue are relatively inexpensive (i.e., most sell for less than $5), and that purchases are typically made upon impulse or oral recommendation, without a great deal of pre-purchase investigation or thoughtful attention, this factor weighs heavily in plaintiff's favor. *See, e.g., Beer Nuts, Inc. v. Clover Club Foods Co., supra*, 805 F.2d at 926 (10th Cir.1986); *McGregor-Doniger, Inc. v. Drizzle Inc., supra*, 599 F.2d at 1137; *American Chicle Co. v. Topps Chewing Gum, Inc.*, 208 F.2d 560, 563 (2d Cir.1953).

After weighing these *Polaroid* factors, the Court is convinced that plaintiff has established a likelihood of confusion as a matter of law. At least three of the factors—proximity of the products, likelihood that plaintiff will bridge the gap, and sophistication of the buyers—weigh heavily in plaintiff's favor. Three others—strength of the mark, similarity between the two marks, and quality of defendant's goods—weigh at least slightly in plaintiff's favor. Only two factors—lack of actual confusion and defendant's good faith—weigh at all in defendant's favor, and even those factors have at times been regarded by the Second Circuit as relatively unimportant. *See, e.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., supra*, 799 F.2d at 875 (actual confusion need not be established where sales of infringing goods have been minimal; intent of defendant "largely irrelevant" because "consumer reactions" usually are unrelated to manufacturer intentions); *W.E. Bassett Co. v. Revlon, Inc., supra*, 435 F.2d at 661–62 (actual confusion need not be established); *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1100–01 (2d Cir. 1969) (absence of actual confusion was "of no significance" where marks were similar and goods competitive), *cert. dismissed*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970). Moreover, although the strength of the PHYSICIANS FORMULA mark is only moderate, that factor is of diminished significance because the overall similarity of the mark to defendant's mark, coupled with the fact that the goods at issue are not merely competitive but virtually identical, would entitle the mark to protection even if it were a weak mark. *See Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1006, 1008–09 (2d Cir.1983) (even the weak mark PLUS would be protectable against competing products; injunction against alleged infringer reversed as to non-competing goods, but affirmed as to "overlapping goods"), *Vitarroz Corp. v. Borden, Inc., supra*, 644 F.2d at 966–967 (although rejecting an automatic-injunction rule for merely competing goods, suggesting that

injunctive relief might be appropriate as a matter of law where the marks and products are "practically identical," because trademark injury in cases of identical marks and goods "might be inevitable"); *American Home Products Corp. v. Johnson Chemical Co., supra*, 589 F.2d at 106 (in cases of identical goods, courts "need not go as far" as in cases of non-identical goods).[10]

Finally, as permitted by the *Polaroid* decision, 287 F.2d at 495 (in determining the propriety of injunctive relief, "the court may have to take still other variables into account"), the Court is compelled to consider the competing equities of the parties as a factor weighing in favor of plaintiff. Since 1970, plaintiff has spent over $6 million advertising and promoting its PHYSICIANS FORMULA products, and has steadily increased gross sales more than tenfold during that period. By contrast, marketing of defendant's line of non-soap products has barely begun, promotional efforts and sales have been minimal, and the evidence shows that defendant has all but ceased marketing the products for an indefinite period of time. Under these circumstances, the Court is of the opinion that the equities should be considered as a factor weighing heavily in plaintiff's favor. *Cf. McGregor-Doniger, Inc. v. Drizzle Inc., supra*, 599 F.2d at 1140 ("this Court has frequently supplemented its consideration of the *Polaroid* factors by balancing the conflicting interests of the parties involved"); *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 536 (2d Cir.1964) (balancing the parties' conflicting interests in addition to weighing the "partial listing of factors" in *Polaroid*).

In sum, because plaintiff has demonstrated the protectability and seniority of its PHYSICIANS FORMULA trademark in connection with cosmetics and skin care products, and because plaintiff has estab-

lished a likelihood of confusion as a matter of law, summary judgment in plaintiff's favor on its trademark infringement claims is appropriate.[11]

**B. Defendant's Motion for a Preliminary Injunction**

■ Defendant's application for a preliminary injunction may be disposed of without extensive discussion. Under established Second Circuit caselaw, an applicant for a preliminary injunction must demonstrate both (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the moving party. *See LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir.1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). In the present case, defendant has satisfied neither of these criteria.

To the extent that the merits of defendant's counterclaims retain any viability in light of the Court's decision to grant summary judgment in favor of plaintiff on plaintiff's trademark infringement claims, the merits appear very weak. As noted at the outset of this decision, defendant's counterclaims allege false representation in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition. In connection with the Lanham Act counterclaim, therefore, for the purpose of the motion for a preliminary injunction, defendant could establish the requisite likelihood of success on the merits as well as risk of irreparable harm by demonstrating a likelihood of confusion as to source or sponsorship of the goods involved. *See Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir. 1982). However, because defendant essentially concedes that it is barred by laches

---

**10.** *See also supra* note 5.

**11.** Although this case, like most trademark cases, revolves around the factual question of likelihood of confusion, summary judgment is appropriate because the material underlying facts are essentially undisputed, and thus the only disputed issue is the application of those

factors to the likelihood-of-confusion test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.* 799 F.2d 867, 876 (2d Cir.1986).

from contesting plaintiff's use of the PHYSICIANS FORMULA trademark and the present PHYSICIANS FORMULA trade dress on cosmetics and skin care products, defendant would have to establish that the alleged false representation, unfair competition, or likelihood of confusion would result solely from plaintiff's proposed change of trade dress, and not merely from the existence and competition of plaintiff's mark and products generally. After examining plaintiff's proposed new trade dress, and comparing it to plaintiff's present trade dress, the Court simply cannot conclude that the new trade dress will confuse consumers or unlawfully injure defendant's business any more than the present one does, if the present one does at all. Contrary to defendant's central contention that plaintiff's new trade dress will change plaintiff's trademark from PHYSICIANS FORMULA to PHYSICIANS and thereby monopolize use of the word "Physicians," a visual inspection of the new trade dress clearly reveals the entire PHYSICIANS FORMULA name. Moreover, the Court finds it difficult to imagine how defendant could ultimately establish that plaintiff's intended change of trade dress is anything but a shrewd, legitimate marketing decision.

Turning to the question of irreparable harm (to the extent the issue need be addressed absent defendant's demonstration of a likelihood of confusion), defendant's evidence is mostly speculative, and is inadequate for preliminary injunctive relief. Moreover, because plaintiff's sales and promotional efforts far exceed those of defendant, suggesting substantially greater consumer awareness of plaintiff's products, it is reasonable to conclude that any consumer confusion as to the source of the parties' respective products would, rather than harm defendant, more likely inure to defendant's benefit.

Because defendant has failed to establish either irreparable harm or serious questions regarding the merits of its counterclaims, a preliminary injunction is not warranted.

### III. CONCLUSION

Based on the foregoing analysis, plaintiff's motion for summary judgment on its trademark infringement claims is GRANTED, and defendant's motion for a preliminary injunction is DENIED.

The parties are to settle, on notice, an appropriate order of judgment consistent with this decision.

IT IS

SO ORDERED.