**PHYSICIANS FORMULA COSMETICS INC., Plaintiff–Appellee,**

v.

**WEST CABOT COSMETICS, INC., Defendant–Appellant.**

**No. 287, Docket 87–7496.**

United States Court of Appeals, Second Circuit.

Argued Oct. 29, 1987.

Decided Sept. 6, 1988.

James E. Daniels, New York City (Jeffrey H. Weinberger, Warshaw Burstein Cohen Schlesinger & Kuh, New York City, of counsel), for defendant-appellant.

Roger E. Podesta, New York City (Bruce P. Keller, Marian W. Payson, Debevoise & Plimpton, New York City, of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, and NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Defendant-appellant West Cabot Cosmetics ("West Cabot") appeals from a grant of summary judgment based on a determination of a likelihood of confusion between West Cabot's "PHYSICIANS & SURGEONS" trademark for skin creams and lotions and appellee's "PHYSICIANS FORMULA" mark used on similar products. Judge Bramwell's opinion is reported at 660 F.Supp. 1222 (E.D.N.Y.1987). We reverse and remand.

## BACKGROUND

Plaintiff-appellee Physicians Formula Cosmetics, Inc. ("Physicians Formula"), founded in 1937 by Dr. Frank Crandall, markets hypoallergenic skin care and cosmetic products, including several facial creams and lotions. The PHYSICIANS FORMULA trademark was registered with the State of California in 1938 and listed on the Supplemental Register in 1964 and on the Principal Register of the United States Patent and Trademark Office in 1982. At first, Dr. Crandall sold Physicians Formula products principally to his own patients, including Mae West. Business grew and by 1961, when Dr. Crandall's widow sold the company, Physicians Formula products were being distributed under its mark in several hundred retail outlets in California and neighboring states.

In 1970, the company had annual sales of approximately $400,000 through approximately six hundred retail outlets. At that time, Physicians Formula embarked on a substantial effort to increase its sales. Between 1970 and 1985, the company spent more than $6 million on advertising and other promotional activities. By the end of 1985, the year in which its current owner, Tambrands, Inc., purchased Physicians Formula for $8.3 million, sales of over $6 million annually were made through more than two thousand retail outlets in twenty-eight states as well as through the mail in at least twenty more. The company has plans to go nationwide.

The trademark PHYSICIANS & SURGEONS has been used on hard-bar soaps by West Cabot and its predecessors since 1888. The mark was registered for soaps in the Principal Register in 1947. Historically, sales of PHYSICIANS & SURGEONS soaps have been modest, less than $200,000 annually, and have been concentrated in the northeastern United States, particularly New York. In 1981, Sigma Pharmaceutical Corporation, West Cabot's immediate predecessor, began marketing a cocoa butter cream, a Vitamin E cream, and Vitamin E oil under the PHYSICIANS & SURGEONS mark. Sales of these products during Sigma's ownership of the mark reached a peak of approximately $50,000 in 1984, and, like the sales of the hard-bar soaps, were heavily concentrated in the Northeast.

West Cabot acquired Sigma's assets in February 1985 for approximately $300,000. In that year, it dropped two of the three lines of skin creams marketed by Sigma and added four others. Total sales of all

PHYSICIANS & SURGEONS products from the date of West Cabot's acquisition of Sigma's assets in February 1985 until December 1986 were approximately $400,-000. Skin creams and lotions accounted for approximately one-third of sales. Like Tambrands, West Cabot hoped to expand the marketing of its full line of skin care products nationwide. West Cabot discontinued active promotion of the PHYSICIANS & SURGEONS line in September 1986, however, because of this trademark litigation.

Physicians Formula became aware of the registration of PHYSICIANS & SURGEONS for soaps during a trademark search in 1981. However, at that time Physicians Formula was not aware that the PHYSICIANS & SURGEONS mark was being used on skin creams and lotions and therefore did not consider the use of that mark on soap as an infringement on its own mark. In December 1985, Physicians Formula first learned that West Cabot was marketing skin creams and lotions under the PHYSICIANS & SURGEONS mark. After fruitless protests to West Cabot, Physicians Formula filed this action seeking injunctive relief and damages under the Lanham Act, New York General Business Law and common law. West Cabot conceded the validity of the PHYSICIANS FORMULA mark and its predecessors' knowledge of that mark as early as 1965, but denied the infringement claims in all respects. After extensive discovery, Physicians Formula moved for summary judgment.

In support of its motion, Physicians Formula contended that: (i) its PHYSICIANS FORMULA mark had acquired secondary meaning; (ii) Physicians Formula's rights to the mark were superior to those of West Cabot because of Physicians Formula's pri-

or use of the mark on skin care products; and (iii) West Cabot's use of the PHYSICIANS & SURGEONS mark created a likelihood of consumer confusion over the source of the product. West Cabot conceded that the PHYSICIANS FORMULA mark had acquired secondary meaning but disputed the prior use and likelihood of confusion. The district court granted summary judgment for Physicians Formula.

## DISCUSSION

 It is not disputed that Physicians Formula has a protectible interest in its mark. Of the four generally accepted classifications, (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful, *see Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–11 (2d Cir.1976), it fits best within the suggestive category. The mark is certainly not generic. Nor is it descriptive, because the mark does little to identify the product other than to locate it in the realm of medicine. That description is sufficient, however, to prevent classification as arbitrary or fanciful. We therefore regard it as suggestive because the impression it conveys falls somewhere between "descriptive" and "fanciful," in that there is some relation between the product's properties and the term, but a consumer is able to identify the genre of product only by using " 'imagination, thought and perception.' " *Id.* at 11 (quoting *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y.1968)). Like fanciful and arbitrary marks, "suggestive" marks may be registered without proof of secondary meaning. *Id.* Of course, the existence of a secondary meaning—public identification of the mark with the producer—is conceded in this case. West Cabot's principal contention on appeal[1] is that the use of the

---

**1.** In the district court, West Cabot argued that the prior use of the PHYSICIANS & SURGEONS mark on hard-bar soaps entitled the company to extend the use of the mark to skin creams and lotions. In rejecting this argument, the district court relied upon a line of cases in which a junior user was given exclusive right to the use of a mark although there was already a senior user of the same mark producing a related or competitive product. 660 F.Supp. at 1224–26.

*See, e.g., France Milling Co. v. Washburn–Crosby Co.,* 7 F.2d 304 (2d Cir.), *cert. denied,* 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925). This refusal to apply the "expansion of business doctrine" to protect the senior user is based on the equities of the particular case, most often the senior user's laches coupled with the junior user's efforts to market its product. "The owner's rights in such appendant markets are easily lost; they must be asserted early, lest they be

PHYSICIANS & SURGEONS mark does not create a likelihood of consumer confusion, or at least that there is a genuine issue of fact over that question.

In determining likelihood of confusion in a trademark infringement case, we examine the following factors:

the strength of [the prior owner's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Although the *Polaroid* test originally was applied to noncompeting products, *see id.*, it has been expanded to apply where, as here, competing goods are involved. *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988); *Vitarroz v. Borden, Inc.*, 644 F.2d 960, 965–67 (2d Cir.1981).

Addressing the *Polaroid* factors in turn, the district court found that, based on its "suggestive" character when applied to skin care products and on its highly successful use, the PHYSICIANS FORMULA mark possessed "at least moderate strength." 660 F.Supp. at 1227. Second, the court found that although the two marks were visually dissimilar, they "are substantially similar in sound and meaning," because they share the dominant first word "Physicians" and are intended to suggest medical endorsement. *Id.* Third, concerning the "proximity of the products," the court found that skin care creams and lotions sold under the two marks were virtually identical and sold in similar stores. *Id.* Fourth, as to "actual confusion," the court rejected Physicians Formula's survey evidence, concluding that there was "virtually no probative evidence of actual confusion presented." *Id.* Fifth, because it found Physicians Formula's evidence of West Cabot's bad faith "speculative at best," the district court assumed that, for purposes of deciding the motion, West Cabot had acted in good faith. *Id.* at 1228. Sixth, the court found no evidence that West Cabot's skin care products were of inferior quality, although it noted that Physicians Formula maintained a superior quality control program. *Id.* Finally, on the issue of the "sophistication of the buyer," the district court concluded that the products at issue were relatively inexpensive and were bought on impulse or oral recommendation. *Id.*

The district court then weighed these factors. The district court concluded that at least two—"proximity of the products" and "sophistication of the buyers"—weighed heavily in Physicians Formula's favor and that three others—"strength of the mark," "similarity between the two marks," and "quality of defendant's goods"—weighed "at least slightly" in Physicians Formula's favor. It found that only two factors—"actual confusion" and "defendant's good faith"—weighed at all in West Cabot's favor. *Id.* The district court then concluded that likelihood of confusion was established as a matter of law. *Id.* at 1229.

---

made the means of reaping a harvest which others have sown." *Dwinell–Wright v. White House Milk Co.*, 132 F.2d 822, 825 (2d Cir.1943) (L. Hand, J.); *see also* 2 J. McCarthy *Trademarks and Unfair Competition* § 24:5 (2d ed. 1984).

We agree with the district court on this issue. The PHYSICIANS FORMULA mark has been used on cosmetics and skin creams since 1937. These products were included under the mark when it was placed on the Supplemental Register in 1964 and the Principal Register in 1982. Hard-bar soaps were the only product marketed under the PHYSICIANS & SURGEONS mark from 1888 until 1981, when it was first applied to skin creams and lotions. At that time, West Cabot's predecessors had known of the use of the PHYSICIANS FORMULA mark on creams and lotions for at least sixteen years but had made no effort to assert their rights against Physicians Formula. Meanwhile, Physicians Formula had gone to considerable expense to promote its mark and did not learn of the use of the PHYSICIANS & SURGEONS mark on creams and lotions until December 1985. It then acted promptly to challenge what it considered an infringing use. The equities therefore completely favor Physicians Formula's right to the exclusive use of its mark on those products.

■ We believe summary judgment was incorrectly granted. We agree that the products to which the marks are applied are identical for all relevant purposes and that buyers of these products will largely act without extensive inquiry. We believe, however, that there is a dispute over the strength of the PHYSICIANS FORMULA mark based on its suggestive character, its secondary meaning, and the similarity of the marks sufficient to preclude a grant of summary judgment. The two marks do share the same first word and both suggest medical endorsement. While PHYSICIANS may be the dominant word in Physicians Formula's mark, however, we cannot say with certainty that it is the dominant word in West Cabot's mark. Obviously, the remaining words of the two marks differ completely. The phrase "& SURGEONS" looks nothing like the word "FORMULA." The trade dress of the different products is dissimilar, and the type styles and graphics of the labels and containers themselves are all readily distinguishable. We therefore agree with the district court that the marks are visually dissimilar. We cannot agree, however, with its observation that the two marks are "substantially similar in sound." "FORMULA" simply does not sound like "& SURGEONS."

We turn next to the issue of similarity of meaning. Neither mark, of course, describes the products—they might as easily be painkillers. Rather, the marks are simply suggestive of medical endorsement.[2] Physicians Formula, however, does not have an exclusive right to the widely relied upon concept of medical endorsement. The concept of medical endorsement is no more subject to exclusive use by a single party than a concept such as "best quality." Physicians Formula's rights are thus limited to preventing competing products from using a mark that conveys the concept of medical endorsement in language likely to confuse a purchaser as to the source of the product. For example, we do not believe that the use of a mark such as DOCTORS CHOICE on skin products would infringe Physicians Formula's mark even though it suggests medical endorsement more directly than PHYSICIANS & SURGEONS.

■ Moreover, "physicians" is not only a common word, but a likely choice to be used with other words to suggest medical endorsement. It cannot be said as a matter of law that any mark conveying medical endorsement and using the word "physicians" is likely to be confused with plaintiff's mark by consumers of skin care products. The instant case differs from *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103 (2d Cir.1978), where we held that the mark "ROACH MOTEL", used on a box that trapped insects, was infringed by "ROACH INN" used on a similar trap. There the concept of "a fanciful abode for roaches in an establishment normally frequented by human travelers" was so catchy that a reasonable consumer would not differentiate between the use of "motel" and "inn." *Id.* at 107. By contrast, the concept of medical endorsement in conjunction with the use of the word "physicians," lacks the uniqueness that would cause a consumer to disregard all differences between marks that use the word "physicians." Even so, we cannot preclude the possibility that the secondary meaning that Physicians Formula has acquired over the years may be so extensive in the relevant market that a mark like PHYSICIANS & SURGEONS used on skin care products will lead consumers to believe that those products have been produced by Physicians Formula. But a strong showing of such likelihood of confusion would have to be made before the use of the word "physicians" in a multiword mark can be rendered exclusive.

**2.** While continuing to acknowledge that both marks convey this impression, for the first time on appeal West Cabot also contends that the meanings of the two marks differ in that PHYSICIANS FORMULA "brings to mind a concoction, a product made with mortar and pestle," while " 'PHYSICIANS & SURGEONS' connotes a collection of professional people." We disagree. Both companies find their respective marks valuable largely because of their belief that an impression of medical approval is conveyed, not because one suggests a concoction and the other a group of professionals.

As to the remaining factors, the primary geographic markets of Physicians Formula and West Cabot do not yet significantly overlap. Thus, the opportunity for actual confusion has been minimal, and we are not disposed to disturb the district court's conclusion that Physicians Formula's survey evidence was insufficient to resolve this issue on a motion for summary judgment. Similarly, the good faith of West Cabot is a factual issue for trial.

We stress that the *Polaroid* test is not a "rigid formula," *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir.1986), where the party with the greatest number of factors weighing in its favor wins. Rather, it is a non-exhaustive catalogue of factors to be considered in determining likelihood of confusion. The bottom line on a motion for summary judgment is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion. Here, the marks are, except for the joint use of a common word, sufficiently dissimilar to create a triable issue.

REVERSED AND REMANDED.