42 C.C.P.A.(Patents)

**JOHN H. BRECK, Inc., Appellant,**

v.

**The ARMAND CO. (Colgate-Palmolive Co., Assignee, Substituted), Appellee.**

**Patent Appeal No. 6096.**

United States Court of Customs and Patent Appeals.

June 15, 1955.

Rehearing Denied Sept. 15, 1955.

Walter C. Ross, Springfield, Mass. (Francis C. Browne, Washington, D. C., of counsel), for appellant.

Bair, Freeman & Molinare, Chicago, Ill. (Will Freeman and W. M. VanSciver, Chicago, Ill., of counsel), for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY and COLE, Judges.

WORLEY, Judge.

The question presented in this appeal is whether concurrent use of the respective trade-marks "Brisk" and "Breck," also "Breck's," on goods of the same descriptive properties would be likely to cause confusion within the meaning of Section 2(d)[1] of the Lanham Act, 60 Stat. 428, 15 U.S.C.A. § 1052.

The applicant, appellee here, alleges use of the mark "Brisk" on shaving

---

1. Sec. 2. Trade-marks registrable on the Principal Register

"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\*　　\*　　\*　　\*　　\*

"(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers: \* \*."

cream by its predecessor since 1928, and registered in 1930. The opposition arose in 1948 when applicant sought registration of that mark to include hair dressing cream and oil, body deodorant, and after-shave cologne, alleging use on those preparations since 1946.

The opposition is predicated on the mark "Breck's," first used and registered in 1931, for preparations for the treatment of the hair and scalp, and "The Breck Method," used since 1915 and registered in 1936, for hair and scalp preparations for dandruff, falling hair, and irritations of the scalp.

The applicant concedes that the opposer commenced use of its marks "Breck" and "Breck's" prior to the former's use of the mark "Brisk;" the parties agree the respective goods, nationally advertised and sold, are of the same descriptive properties; and further, that there is no evidence of any instance of actual confusion between the involved marks on the designated goods.

In sustaining the opposition, the Examiner of Interferences held that, while the marks had no similarity in meaning, they did have such a strong resemblance in both composition and sound that he was clearly of the opinion similarity in those respects was such that contemporaneous use on the specified goods would be reasonably likely to cause confusion in trade.

In reversing the examiner, the Assistant Commissioner noted that although the marks "look somewhat alike," a difference in the print type used resulted in a somewhat different appearance; that although there were some similarities in sound, the dissimilarities "probably outweigh them;" and concluded:

"The greatest dissimilarity is in the meaning or significance of the marks. 'Breck' originally was a surname which has acquired a secondary significance. 'Brisk' is an adjective meaning full of life; keenly alive or alert; sharp or keen to the senses; stimulating; freshly invigorating. As applied to applicant's products it has these suggestive qualities.

"It is believed that the impression created by applicant's mark—and the recollection of that impression by the purchasing public—is such as to distinguish the goods of applicant from those of opposer, * * *."

It is always difficult to determine with certainty the presence or absence of "a likelihood of confusion" in the mind of the average purchaser, and becomes extremely so in a case as close as this. That difficulty is well illustrated by the divergent opinions below. We intend no flattery when we say that both the Examiner of Interferences and Assistant Commissioner are individuals of recognized ability and with long experience in the trade-mark field; yet, on the same facts, opposite conclusions were reached.

We have carefully reviewed the record and decisions below and are of the opinion the opposition should have been sustained.

■ Obviously there is no similarity in the meaning of the two marks, but we think there is such similarity in the overall appearance and sound of the marks as to likely create doubt in the mind of the average purchaser when they are applied to identical goods. While it might well be true that a certain class of purchaser would note the difference in meaning of the marks, we have grave doubts that the average purchaser would attach sufficient importance thereto as to negate or overcome the impression created by their similarity in appearance and sound.

■ As previously noted, the applicant concedes prior use of the marks "Breck" and "Breck's" on the involved goods. Where an applicant seeks to expand its mark to cover the same type of goods protected by an established mark, it should not be of such a nature

as to "likely," as contemplated by the statute, create doubt in the mind of the public as to the source or origin of the respective goods. If it should be of that nature, as we think is the case here, any reasonable doubt should be resolved in favor of the established mark.

In view of the above it becomes necessary to reverse the decision appealed from.

Reversed.

GARRETT and JOHNSON, Judges, dissent.