59 CCPA

**KEY CHEMICALS, INCORPORATED,**
Appellants,

v.

**KELITE CHEMICALS CORPORATION,**
Appellee.

Patent Appeal Nos. 8681, 8682.

United States Court of Customs
and Patent Appeals.
Aug. 31, 1972.

Robert G. McMorrow, Washington, D. C., attorney of record, for appellant.

Alan M. Abrams, Des Plaines, Ill., attorney of record, for appellee.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Judges, and MALETZ, Judge, United States Customs Court, sitting by designation.

MALETZ, Judge.

These consolidated appeals by Key Chemicals, Inc. (Key) are from so much of the decision of the Trademark Trial and Appeal Board[1] as sustained the oppositions by Kelite Chemicals Corp. (Kelite) to Key's applications to register "KEY-MIX"[2] and "KEY CHEM",[3] both for "cleaning compounds".

---

1. Reported at 162 USPQ 474 (1969). Familiarity with that opinion is assumed.

2. Application serial No. 247,032, filed June 1, 1966, and asserting first use in commerce on January 1, 1960.

3. Application serial No. 247,033, filed June 1, 1966, and asserting first use in commerce on November 6, 1959.

Kelite's opposition is chiefly predicated on ownership and prior use of its registered mark "KEYKOTE" [4] for a "Chemical compound which, when dissolved in water, is used in the treatment of steel to inhibit oxidation or corrosion and to provide a bond for paint". To a lesser extent, Kelite also relies on its registered marks "KELITE" [5] for "steam cleaning machines for cleaning automobiles, heavy machinery, and building fronts"; "KE-SONIC" [6] for "emulsion cleaners"; and "KELITE" [7] in association with a key design for the goods mentioned in connection with "KEYKOTE" and also for "Industrial cleaning compounds—namely, cleaning powder, cleaning paste, cleaning fluids and soaps, and rust and scale solvents". Kelite is of the view that it will be damaged by the registrations sought because "KEY-MIX" and "KEY CHEM" so resemble the above-registered marks as to be likely, when applied to Key's goods, "to cause confusion, or to cause mistake, or to deceive". 15 U.S.C. § 1052(d).

With one major exception, which we treat below, appellant has not raised any serious question regarding the manner in which the board dealt with the nature of the parties' respective goods, channels of trade, modes of advertising and class of customers. Consequently, we need not reiterate the board's factual analysis here, beyond noting that the record shows that both Kelite and Key are engaged in selling of specialized cleaning compositions for use in removing dirt, soil, rust, scale and the like from industrial machinery and equipment. Kelite sells these products on a nationwide basis, while Key sells the products principally in the Delaware Valley area.

The board specifically found that Kelite and its predecessors have promoted, advertised and sold industrial cleaners and metal treating agents under its "KELITE" house mark, as well as under various secondary marks, including "KEYKOTE" and "KE-SONIC"; that the description of goods for which Key seeks registration—"cleaning compounds"—encompasses Kelite's products as set forth in its "KEYKOTE" registration; and that "the goods of the parties must be considered, for purposes herein, as being identical in kind."

Against this factual background, the board considered that "KEY-MIX", when applied to applicant's cleaning compounds, differed sufficiently in appearance, sound and connotation from opposer's "KELITE" and "KE-SONIC" marks as to obviate a likelihood of confusion.[8] However, in comparing applicant's "KEY CHEM" and "KEY-MIX" with opposer's "KEYKOTE", the board felt otherwise:

> Considering the marks "KEY-MIX" and "KEYKOTE", it is apparent that both marks have the identical initial portion followed by a descriptive term. The salient and characterizing feature of these marks is the term "KEY", a wholly arbitrary term as applied to the goods here involved. We conclude that applicant's mark "KEY-MIX", in its entirety, so resembles opposer's mark "KEYKOTE" as to be likely to cause confusion or mistake.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The marks "KEY CHEM" and "KEYKOTE" are substantially similar in sound and, of course, both include

4. Registration No. 589,736, granted May 11, 1954, and asserting first use in commerce in 1951.

5. Registration No. 659,771, granted March 25, 1958, and asserting first use in commerce in 1949.

6. Registration No. 663,586, granted June 24, 1958, and asserting first use in commerce in 1955.

7. Registration No. 807,721, granted May 3, 1966, and asserting first use in commerce in 1945.

8. The board made no corresponding finding, one way or the other, with respect to "KEY CHEM".

the term "KEY". In our opinion "KEY CHEM" so resembles opposer's previously registered and used mark "KEYKOTE" as to be likely, when applied to cleaning compounds, to cause confusion or mistake.

As a preliminary matter, appellant-Key contends that the board erred factually in determining that the goods of the parties are the same. It alleges, contrary to the board's findings, that Kelite's mark "KEYKOTE" is not used on, or registered for, a cleaning composition.

There is substantial evidence, however, to support the board's finding that Kelite has promoted and advertised an industrial cleaning composition under the "KEYKOTE" mark. Thus, Kelite's Exhibit 35, a trade magazine advertisement reproduction not commented on by appellant, extols the virtues of "KEY-KOTE *cleaning* and phosphating chemicals" [emphasis added] which are employed in conjunction with Kelite's combination steam cleaning and phosphatizing machinery for use in preparing the surfaces of various metal products for painting. From this, it would appear that some of Kelite's goods advertised and promoted under the "KEYKOTE" mark actually possess functions that go beyond the purpose ascribed to them in the "KEYKOTE" registration. Likewise, it appears from the record that some of Key's goods sold under its "KEY-MIX" and "KEY CHEM" marks also possess functions in addition to the mere "cleaning" function recited in its applications. Thus, literature submitted with Key's "KEY CHEM" application to illustrate how that mark is actually used shows that a liquid cleaning composition sold under that mark also "helps prevent rust", a function identical to that expressed in Kelite's "KEYKOTE" registration, i. e., to inhibit oxidation of steel. Similarly, the record establishes that cleaning compositions which Key has sold under the "KEY-MIX" mark have been used to remove or clean rust and scale from ferrous metals, a func-

tion which, if not identical, is at least complementary to the function of the goods covered by the "KEYKOTE" registration.

■ ■ In any event, it is not necessary, as appellant seems to assume, that the parties' goods must be identical in order to sustain a finding of likelihood of confusion or mistake. United Merchants and Manufacturers, Inc. v. R. A. Products, Inc., 56 CCPA 751, 404 F.2d 399 (1968). In this connection, cleaning compounds for removing dirt, rust and scale from metals, and metal-treating compositions for inhibiting corrosion and rust, are related items which a single manufacturer might be expected to make and sell; which Kelite in fact does make and sell; and which are sold to the same class of purchasers. In such circumstances, when the same or similar marks are applied to such goods, purchaser confusion is likely to occur. Hence, in the final analysis, we must conclude that the board did not err in determining that a purchaser familiar with Kelite's line of "KEYKOTE" metal-treating compositions would, on encountering "KEY-MIX" or "KEY CHEM" cleaning compounds, be likely to assume by reason of confusion or mistake that a common source or origin existed. Any doubt on that score is resolved against the newcomer.

■ Nor is our conclusion altered by the presence in the record of about 40 third-party registrations which embody the word "KEY". The great majority of those registered marks are for goods unrelated to those in issue, and there is no evidence that they are in continued use. We, therefore, can give them but little weight in the circumstances present here. Hunt Foods and Industries, Inc. v. Gerson Stewart Corp., 54 CCPA 751, 367 F.2d 431 (1966), and cases cited therein.

Finally, Key argues that the registration of "KEY CHEM" it now seeks will not damage Kelite as a matter of law in view of Key's ownership of an incontest-

able, subsisting registration[9] of "KEY CHEM" for various inorganic, organic and specialty chemicals, including, inter alia, "inhibited powdered sulfamic acid cleaners". At oral argument, appellant cited Joseph & Feiss Co. v. Sportempos, Inc., 59 CCPA 742, 451 F.2d 1402 (1971), in support of its position.

We see little merit in this argument. As the board pointed out, the registration presently sought is for "cleaning compounds" broadly, whereas the registration already owned by appellant includes but a single, specific cleaner. This is to be contrasted with *Sportempos*, supra, and Morehouse Mfg. Corp. v. J. Strickland Co., 56 CCPA 946, 407 F.2d 881 (1969), cited therein, where the goods covered by the applicant's previous registrations were found to be, for all intents and purposes, identical to the goods of the later applications. Considering the far broader recitation of goods in Key's present application, vis-a-vis the recitation of goods in its previous registration of "KEY CHEM", and the fact that at least some of the goods Key presently sells under its "KEY CHEM" mark apparently do possess rust inhibiting properties in common with those sold under Kelite's "KEYKOTE" mark and specifically covered by its registration, we think opposer might well be damaged by the registration sought over and above any reason it might have asserted at one time against Key's now incontestable registration. In short, in our view, a trademark owner cannot by normal expansion of its business extend the use of its trademark to goods not covered by its previous registration, where the result would be a likelihood of confusion caused by similarity of that mark to a mark already registered by a prior user for the same or similar goods. See Breck, Inc. v. Armand Co., 42 CCPA 1099, 225 F.2d 246 (1955).

The decision of the board is affirmed.

Affirmed.

LANE, J., concurs in the result.

59 CCPA

9. Registration No. 718,775, granted July 25, 1961.