THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
April 22, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Thor Tech, Inc.
_____

Serial No. 78634024
_____

B. Joseph Schaeff of Dinsmore & Shohl LLP for Thor Tech, Inc.

Paul A. Moreno, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).
_____

Before Holtzman, Walsh and Bergsman, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Thor Tech, Inc. ("applicant") filed an intent-to-use application to register the mark WAVE, in standard character form, for goods ultimately identified as "recreational vehicles, namely travel trailers and fifth wheel trailers," in Class 12.

The Trademark Examining Attorney refused to register applicant's mark under Section 2(d) of the Trademark Act of 1946, 15 U.S.C. §1052(d), on the ground that applicant's mark is likely to cause confusion with the mark THE WAVE,

in standard character form, for "trailers, dump trailers, and truck bodies," in Class 12.[1]

Our determination of likelihood of confusion under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the services. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks").

A.  <u>The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression</u>.

We turn first to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound,

---

[1] Registration No. 3136677, issued August 29, 2006.

connotation and commercial impression.  *In re E. I. du Pont De Nemours & Co.,* 177 USPQ at 567*.*  In a particular case, any one of these means of comparison may be critical in finding the marks to be similar.  *In re White Swan Ltd.,* 9 USPQ2d 1534, 1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988).

The marks are virtually identical.  The addition of the word "The" at the beginning of the registered mark does not have any trademark significance.  "The" is a definite article.  When used before a noun, it denotes a particular person or thing.[2]  *See In re Narwood Productions, Inc.*, 223 USPQ 1034 (TTAB 1984) (noting the insignificance of the word "the" in comparison of THE MUSIC MAKERS and MUSICMAKERS).  *See also In re Universal Package Corporation,* 222 USPQ 344, 345 (TTAB 1984); *Conde Nast Publications Inc. v. Redbook Publishing Company,* 217 USPQ 356, 357 (TTAB 1983).  Thus, as used in the registered mark THE WAVE, the word "The" simply emphasizes the word "Wave."

---

[2] The Random House Dictionary of the English Language (Unabridged), p. 1965 (1987).  The Board may take judicial notice of dictionary evidence.  *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594, 596 (TTAB 1982), *aff'd,* 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

B.   The similarity or dissimilarity and nature of the goods as described in the application and registration at issue.

Having found that applicant's mark is effectively identical to registrant's mark, we turn to the similarity or dissimilarity and nature of applicant's "recreational vehicles, namely travel trailers and fifth wheel trailers," and the registrant's "trailers, dump trailers, and truck bodies."  It is not necessary that these goods be identical or even competitive to support a finding of likelihood of confusion.  Rather, it is sufficient that the goods are related in some manner, or that the circumstances surrounding their marketing are such, that they would be encountered by the same persons in situations that would give rise, because of the marks, to a mistaken belief that they originate from the same source or that there is an association or connection between the sources of the goods. *See In re Opus One, Inc.,* 60 USPQ2d 1812, 1815 (TTAB 2001); *In re Melville Corp.,* 18 USPQ2d 1386, 1387 (TTAB 1991).

Moreover, the greater the degree of similarity between the applicant's mark and the registered mark, the lesser the degree of similarity between the applicant's goods and registrant's goods that is required to support a finding of likelihood of confusion.  *In re Opus One, Inc.,* 60 USPQ2d at 1815; *In re Concordia International Forwarding Corp.,*

4

222 USPQ 355, 356 (TTAB 1983).  Where, as in this case, the applicant's mark is virtually identical to the registrant's mark, there need only be a viable relationship between the goods to find that there is a likelihood of confusion.  *See In re Shell Oil Co.,* 992 F.2d 1204, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993) ("even when the goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source"); *In re Concordia International Forwarding Corp.,* 222 USPQ2d at 356.

To properly analyze the relationship of the goods, we must first discuss what they are.  The relevant products are defined below:

1.  A "trailer" is "[a] large transport vehicle designed to be hauled by a truck or tractor," and "[a] furnished vehicle drawn by a truck or automobile and used when parked as a dwelling or office."[3]  "Sometimes recreational vehicles, travel trailers, or mobile homes with limited living facilities where people can camp or stay have been referred to as trailers."[4]

---

[3] American Heritage Dictionary of the English Language (4th ed. 2000) attached to the February 23, 2007 Office Action.  *See also* Random House Unabridged Dictionary (2006) attached as Exhibit C to applicant's August 27, 2007 Response.

[4] *Wikipedia* (September 21, 2007) attached to the September 21, 2007 Office Action.

2.    A "recreational vehicle" is a "van or utility vehicle used for recreational purposes, as camping, and often equipped with living facilities."[5]

3.    A "travel trailer" is "a trailer towed behind a road vehicle . . . to provide a place to sleep which is more comfortable, sheltered and protected than a tent. . . . It provides the means for people to have their own home on a journey or a vacation (holiday) . . . Travel trailers . . . vary from small basic models which may be little more than a tent on wheels to those containing several rooms with all the furniture and furnishings and equipment of a home."[6]

5.    A "fifth wheel" trailer employs a special coupling or hitch "to attach the trailer to the bed of the towing vehicle, ahead of the rear wheels.  This type of hitch is used for larger trailers and provides considerably more stability than does a traditional bumper-pull hitch."[7] A photograph of trailer with a fifth wheel coupling is shown below.

---

[5] The Random House Dictionary of the English Language (Unabridged), p. 1613.
[6] Wikipedia (August 23, 2007) attached as Exhibit C1 to applicant's August 27, 2007 Response.
[7] Wikipedia (September 21, 2007) attached to the September 21, 2007 Office Action.

6



A gooseneck trailer attached to a pickup truck with fifth wheel coupling.

The examining attorney submitted eight third-party registrations based on use in commerce identifying trailers *per se* and trailers associated with recreational vehicles and motor homes.[8] Third-party registrations which individually cover a number of different items which are based on use in commerce may have some probative value to the extent that they serve to suggest that the listed goods are of a type which may emanate from the same source. *In re Albert Trostel & Sons Co.,* 29 USPQ2d at 1785-1786; *In re Mucky Duck Mustard Co. Inc.,* 6 USPQ2d 1467, 1470 n.6 (TTAB 1988).

On the other hand, applicant has submitted copies of 13 sets of registrations for the same or similar marks for different types of trailers owned by different entities

---

[8] The Examining Attorney submitted 12 registrations in all, but four of the registrations do not list both types of trailers. The Examining Attorney also submitted a copy of excerpts from Clem's Trailers Sales, Inc. (clemstrailersales.com) and Cowboy Cadillac (url not provided), a report from IBIS*World* (url not provided) and the U.S. Census Bureau 2002 NAICS Definitions (url not provided) purportedly to show that travel trailers and fifth wheel trailers are subsets of trailers. These websites do not support that contention, and we find that these websites have no probative value.

arguing, in essence, that the third-party registrations serve to suggest that the listed goods are of a type which may emanate from different sources.  A representative sample of these registrations is set forth below.

| Mark | Registration No. | Goods |
|------|------------------|-------|
| CLASSIC | 3329542 | Dump trailers and dump truck bodies |
| | 2808250 | Horse and livestock trailers |
| SUMMIT | 2765081 | Enclosed trailers, namely cargo trailers and trailers for hauling landscape products and equipment |
| | 3319580 | Recreational vehicles, namely travel trailers, fifth wheel trailers |
| PATRIOT | 3060070 | Cargo trailers |
| | 2295459 | Recreational vehicles, namely motor homes |
| GENESIS | 2930020 | Truck trailers, semi-trailers, discharge trailers, cargo trailers, vehicle dump bodies, dump trailers, dump chassis, garbage trucks |
| | 2953417 | Recreational vehicles, namely motor homes |
| PIONEER | 2777571 | Enclosed cargo trailers |
| | 3048544 | Travel trailers |
| ASPEN | 1937962 | Cargo trailers, trucks and trailer parts |
| | 2871549 | Campers, namely slide-in, pop-up campers |

The third-party registrations do not support applicant's contention for two reasons. First, none of the registrations are for trailers *per se.* Therefore, there are no registrations for trailers and recreational vehicles, including travel trailers or fifth wheel trailers. Second, the fact that both types of trailers are listed in the registrations (commercial or industrial trailers and recreational vehicles) does not necessarily mean that the registrants regard them as different products. It may be that the registrants want to be clear that the specific types of trailers are covered by their registrations.

Applicant also argues that the goods at issue are different. Applicant contends that it intends to use its WAVE mark to identify recreational vehicles while registrant uses THE WAVE to identify commercial and industrial trailers sold to professional purchasers. Applicant asserts that "[t]he term 'trailers' in the cited registration should be read in *pari materia* with the associated goods listed in the registration."[9] In essence, applicant is arguing that we should interpret the

---

[9] Applicant's Brief, p. 3; Applicant's March 24, 2008 Request for Reconsideration, p. 1. *"Pari materia"* means "of the same matter; on the same subject; as, laws *pari materia* must be construed with reference to each other." Black's Law Dictionary, p. 1004 (5th ed. 1979),

registrant's description of goods to read as follows: "industrial and commercial trailers sold to professional purchasers, dump trailers and truck bodies."

The likelihood of confusion is determined on the basis of the goods as they are identified in the application and registration at issue. *In re Elbaum,* 211 USPQ 639, 640 (TTAB 1981); *In re William Hodges & Co., Inc.,* 190 USPQ 47, 48 (TTAB 1976). *See also Octocom Systems, Inc. v. Houston Computers Services Inc.,* 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed").

As the Court of Customs and Patent Appeals, the predecessor of our primary reviewing court, explained in *Tuxedo Monopoly, Inc. v. General Mills Fun Group, Inc.,* 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981):

> Here, appellant seeks to register the word MONOPOLY as its mark without any restrictions reflecting the facts in its actual use which it argues on this appeal prevent likelihood of confusion. We cannot take such facts into

consideration unless set forth in its application.

Likewise, in this case, we must also analyze the similarity or dissimilarity and nature of the goods based on the description of the goods set forth in the application and the registration at issue. In other words, we may not limit or restrict the trailers listed in the cited registration based on extrinsic evidence. Therefore, we must construe registrant's trailers as encompassing travel trailers and fifth wheel trailers.[10]

However, as indicated above, applicant argues that when we interpret the breadth of the goods listed in the cited registration, we must construe "trailers" with reference to the other listed goods "dump trailers and truck bodies" (*i.e.,* in *pari materia* with the other listed products). Applicant's argument is not well taken. First, applicant has not cited, and we have not found, any authority for applicant's suggested interpretation of the description of goods.

---

[10] We properly used the dictionary definitions (*i.e.,* extrinsic evidence) to determine the definitions for the type of trailers, recreational vehicles, travel trailers, and fifth wheel trailers listed in the description of goods. *In re Trackmobile Inc.,* 15 USPQ2d 1152, 1154 (TTAB 1990). Once those meanings were established, we determined the issue of likelihood of confusion based on the description of goods in the application and registration, even if the definitions resulted in a broad scope of goods.

Second, it is acceptable and appropriate for an applicant to use a broad description of goods.

> Applicants frequently use broad terms to identify the goods or services in an application. . . . The requirement for use or a bona fide intent to use is not necessarily violated by broad identifying terms.  When a mark is used on a number of items that make up a homogeneous group, a term that identifies the group as a whole would be understood as encompassing products of the same general type that are commercially related.
>
> As long as a broad term identifies the goods or services that are intended to be covered with reasonable certainty, it will be reasonable, from a commercial viewpoint, to consider that the mark has been used for all the related goods or services that fall in the designated group.

TMEP §1402.03 (5th ed. 2007).

Where a term for a particular product has multiple meanings, the International Class may be used to determine the particular meaning.  For example, if the applicant identifies its goods as "mufflers," in Class 25 (the clothing class), an Examining Attorney would not require further modification to indicate that articles of clothing are intended, rather than automotive mufflers.  *See In re Paper Doll Promotions Inc.,* 84 USPQ2d 1660, 1665 (TTAB 2007), *citing* TMEP §1402.03 ("the conclusion that a term would clearly include items classified in more than one

class [and is therefore unacceptable as indefinite] should not be drawn unless unreasonable, in light of the commercial relationships between all the goods or services identified in the application"). This is far different from what applicant asserts we should do (*i.e.,* interpret the word "trailers" in the registered mark to be "industrial and commercial trailers sold to professional purchasers" because registrant also lists dump trailers and truck bodies in its description of goods). We have no authority to read any restrictions or limitations into the registrant's description of goods.[11]

Because we may not read any restrictions or limitations into the registrant's description of goods, applicant's third-party registrations submitted to show that different entities have registered the same or similar

---

[11] Applicant was not without a remedy. Section 18 of the Trademark Act of 1946 gives the Board the equitable power to cancel registrations in whole or in part, "restrict the goods or services identified in an application or registration," or to "otherwise restrict or rectify . . . the registration of a registered mark." 15 U.S.C. §1068; Trademark Rule 2.133(b). *See also* TBMP §309.03(d)(2d ed. rev. 2004) and cases cited therein. Accordingly, applicant could have sought to restrict the description of goods in the cited registration to "industrial and commercial trailers sold to professional purchasers" and excluding recreational vehicles by filing a partial petition to cancel the cited registration and alleging that the proposed restriction will avoid a likelihood of confusion and that registrant is not using the mark on the products being excluded from the registration. *Eurostar Inc. v. "Euro-Star" Reitmoden GmbH & Co.*, 34 USPQ2d 1266, 1271 (TTAB 1994).

marks for trailers and recreational vehicles have little probative value because none of those registrations is for trailers *per se.*

In view of the foregoing, we find the term "trailers" in the description of goods for the cited registration encompasses the terms travel trailers and fifth wheel trailers in applicant's description of goods. Accordingly, the goods are related.

C. The similarity or dissimilarity of likely-to-continue trade channels and classes of consumers.

Because there are no limitations as to channels of trade or classes of purchasers in the registration, it is presumed that the registrant's trailers move in all channels of trade normal for those products, and that they are available to all classes of purchasers for the listed goods. *See In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992). Moreover, because we have found that trailers encompass travel trailers and fifth wheel trailers, the goods in the application and the cited registration are in part identical and we must presume that the channels of trade and classes of purchasers are the same. *See Genesco Inc. v. Martz,* 66 USPQ2d 1260, 1268 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the

identifications thereof as to trade channels and purchasers, these clothing items could be offered and sold to the same classes of purchasers through the same channels of trade"); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers"). Accordingly, we must presume that these products move in the same channels of trade and are available to the same consumers.

D.   The strength of the registered mark.

Applicant submitted copies of numerous registrations for marks comprising or containing the word "Wave" for a variety of goods and services, none of which is for trailers.  Applicant submitted these third-party registrations to show that registrant's mark THE WAVE is a weak mark entitled to only a narrow scope of protection or exclusivity of use.  Applicant's argument is unpersuasive.

In terms of demonstrating the strength of a mark, absent evidence of actual use, third-party registrations have little probative value because they are not evidence that the marks are in use on a commercial scale or that the public has become familiar with them.  *See Smith Bros. Mfg. Co. v. Stone Mfg. Co.,* 476 F.2d 1004, 177 USPQ 462, 463

(CCPA 1973) (the purchasing public is not aware of registrations reposing in the U.S. Patent and Trademark Office). *See also In re Hub Distributing, Inc.,* 218 USPQ at 285.

> [I]t would be sheer speculation to draw any inferences about which, if any of the marks subject of the third party (sic) registrations are still in use. Because of this doubt, third party (sic) registration evidence proves nothing about the impact of the third-party marks on purchasers in terms of dilution of the mark in question or conditioning of the purchasers as their weakness in distinguishing source.

*In re Hub Distributing, Inc.,* 218 USPQ at 286.

While third-party registrations may be considered to show that a registered mark is weak because it is descriptive or suggestive, the indiscriminate citation of third-party registrations without regard to the goods involved cannot be indicative of descriptive or suggestive connotations. *In re Jane P. Seamans,* 193 USPQ 725, 726-727 (TTAB 1977). In this case, the third-party registrations are of limited probative value because the goods identified in the registrations appear to be in fields which are far removed from trailers and recreational vehicles. *Key Chemicals, Inc. v. Kelite Chemicals Corp.,* 464 F.2d 1040, 175 USPQ 99, 101 (CCPA 1972).

E. Balancing the factors.

In view of the facts that the marks are virtually identical, the goods are legally the same, and because we must presume that the goods move in the same channels of trade and are available to the same classes of consumers, we find that applicant's registration of the mark WAVE for "recreational vehicles, namely travel trailers and fifth wheel trailers" is likely to cause confusion with the mark THE WAVE for "trailers, dump trailers, and truck bodies."

Decision:  The refusal to register is affirmed.